U.S. Packing Company, Inc., et al. [1] v. Commissioner. U. S. Packing Co. v. Commissioner
Docket Nos. 31137, 31377-31380.
United States Tax Court
T.C. Memo 1955-194; 1955 Tax Ct. Memo LEXIS 143; 14 T.C.M. (CCH) 778; T.C.M. (RIA) 55194; July 15, 1955
Walter H. Maloney, Esq., 526 Continental Building, Washington, D.C., and V. E. Phillips, Esq., Direks Building, Kansas City, Mo., for the petitioners. Ray H. Garrison, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income, declared value excess-profits, and excess profits tax, and penalties, as follows: U.S. Packing Company, Inc., Docket No. 31137
Year
50%
25%
Ended
Tax
Deficiency
Penalty
Penalty
Aug. 31, 1943
Income
$ 2,931.51
$ 1,465.75
$ 732.88
Aug. 31, 1943
Declared Value Excess
Profits
15,273.65
7,636.83
3,818.41
Aug. 31, 1944
Declared Value Excess Profits
8,158.44
4,079.22
Aug. 31, 1945
Declared Value Excess Profits
5,034.18
2,517.09
Aug. 31, 1943
Excess Profits
97,507.15
48,753.58
24,376.79
Aug. 31, 1944
Excess Profits
48,987.84
24,493.92
Aug. 31, 1945
Excess Profits
31,628.46
15,814.23
Sam Simon, Docket No. 31377
1942
Income
$ 849.03
$ 424.52
1943
Income
79,652.90
39,826.45
1944
Income
3,312.22
1,656.11
1945
Income
12,029.62
6,014.81
Albert Simon, Docket No. 31378
1942
Income $
$ 669.13
1943
Income
4,899.06
2,449.53
1945
Income
593.80
296.90
Clara Simon, Docket No. 31379
1942
Income
$ 234.42
$ 117.21
$ 58.61
1943
Income
11,858.05
5,929.03
2,964.51
1944
Income
305.00
152.50
Melvin Simon, Docket No. 31380
1942
Income
$ 575.43
$ 287.72
$ 57.54
1943
Income
16,331.66
8,165.83
1944
Income
275.14
137.57
1945
Income
1,330.45
665.23
*144 The following issues are presented: (1) Were the gross sales of petitioner U.S. Packing Company, Inc., for the years ended August 31, 1943, 1944, and 1945 understated on its tax returns? (2) Did petitioners Sam Simon, Albert Simon, Clara Simon and Melvin Simon receive unreported income for the years 1942 through 1945? (3) Is the U.S. Packing Company, Inc., liable for penalties under section 291(a) of the 1939 Code for failure to file an excess profits tax return for the year ended August 31, 1943, and for failure to file an income and declared value excess-profits tax return for the year ended August 31, 1943, within the time provided by law? (4) Is Clara Simon liable for a penalty under section 291(a) for failure to file tax returns for 1942 and 1943? (5) Were any deficiencies due to fraud with intent to evade tax? Findings of Fact Some of the facts are stipulated and are incorporated herein by this reference. The U.S. Packing Company, Inc., hereinafter referred to as the Corporation, was incorporated in 1942 under the laws of Kansas, and its principal place of business was in Kansas City, Kansas. It filed its tax returns for the fiscal years ended August 31 with *145 the collector of internal revenue for the district of Kansas. The corporation was formed by Sam Simon and his two sons, Albert Simon and Melvin Simon. All had recently moved from St. Paul, Minnesota, to Kansas City, Missouri. Sam's wife, Clara, joined them in Kansas City after December 14, 1944. Sam, Albert, and Melvin were experienced in the meat packing industry prior to the incorporation of the U.S. Packing Company, Inc. Sam and Clara were residents of Kansas City, Missouri. Sam filed a cash basis income tax return for 1942 with the collector of internal revenue for the district of Minnesota. His returns for the years 1943 through 1945 were filed on a cash basis with the collector for the sixth district of Missouri. Clara filed an individual income tax return for 1944 with the collector for the sixth district of Missouri. She did not file a return for the year 1942 or 1943. Albert Simon filed his income tax returns on a cash basis for 1942, 1943 and 1945 with the collector for the sixth district of Missouri. He filed his income tax return for 1942 on March 15, 1943, and on April 28, 1948, he filed an amended return for 1942. In the amended return Albert reported additional *146 taxable income for 1942 in the amount of $7,569.28; he collected this money from the Corporation's over-ceiling meat sales. No part of this was reported on his original return. Melvin Simon filed his income tax returns on a cash basis for 1942 through 1945 with the collector for the sixth district of Missouri. The authorized capital stock of the Corporation was 1,500 shares of common stock with a par value of $100 a share. However, the Corporation issued only 700 shares and had paid-in capital of $70,000. The stock was subscribed as follows: No. of
Subscriber
Shares
Sam Simon
100
Sam Simon, trustee for Kenneth Simon
50
Sam Simon, trustee for Herschel Simon
50
Sam Simon, trustee for Ruth Simon
50
No. of
Subscriber
Shares
Sam Simon, trustee for Clara Simon
50
Sam Simon, trustee for Herman Simon
50
Superb Packing Company, Chicago, Ill.
350
Later, the Corporation purchased the 350 shares from the Superb Packing Company. The Corporation held this stock as treasury stock throughout the fiscal year 1944. Sam then purchased the treasury stock and new certificates were issued as follows: No. of
Issued to
Shares
Sam Simon, trustee for Melvin Simon
50
Sam Simon, trustee for Albert Simon
50
Sam Simon
250
*147 The corporation declared no dividends payable to its stockholders during the period September 24, 1942, to August 31, 1945. During the fiscal years 1943 through 1945, the corporate officers were as follows: Sam Simon, president; Albert Simon, secretary; Melvin Simon, treasurer. Albert also served as general manager. During these same years the board of directors consisted of Sam, Albert, Clara and Melvin Simon. For the fiscal years 1943, 1944 and 1945, the Corporation reported on its tax returns the following: 1943
1944
1945
Sales
$2,560,931.95
$3,692,120.96
$2,334,506.84
Cost of goods sold
2,530,793.28
3,522,961.33
2,214,141.45
Gross profit
$ 30,138.67
$ 169,159.63
$ 120,365.39
Selling and administrative expenses
39,986.96
73,367.92
98,608.45
Operating income
- 9,848.29
95,791.71
21,756.94
Other income (or loss)
- 518.02
- 7,336.53
- 5,682.41
Net income (or loss) $- 10,366.31
$ 88,455.18
$ 16,074.53
The Corporation operated a slaughtering and processing plant in Kansas City. It sold dressed carcasses of beef in carload lots, hides, bones, and offal. One of the Corporation's best customers was the Superb Packing Company, *148 an Illinois corporation, with Peter Golas its president. The Corporation maintained a double entry system of books. The books were set up by a certified public accountant from Chicago who was also the accountant for Peter Golas and the Superb Packing Company. The accountant came to the Corporation's plant once or twice a month to make entries. Some of the entries reflecting sales were not made until several months after the sale, and entries for both sales and cash receipts were sometimes made without invoices or sales memoranda reflecting the sale. The Corporation was subject to the restrictions imposed by the Emergency Price Control Act of 1942. This act limited the prices that could be charged for meat and the number of animals that could be slaughtered. The restrictions were in existence throughout the years before us. The Corporation, together with Sam and Albert, were convicted on June 13, 1944, by the United States District Court for the Eastern District of New Jersey for conspiracy to violate the price control laws. The Government charged that the Corporation and others "continuously from day to day" between July 13, 1942, and February 27, 1943, sold and delivered beef *149 for overceiling prices. The side payments were in cash and were not reflected on the invoices that accompanied the transactions. The side money, according to the indictment, was turned over to Peter Golas, who divided the sums with the Corporation in accordance with a profit sharing agreement. Sam and Albert pleaded guilty to the conspiracy charge; they were fined and sentenced to prison. Sam, as president, entered a plea of guilty for the Corporation, which was also fined. The black market payments apportioned to the Corporation under the profit sharing agreement were sent to the Corporation by Peter Golas and another, Jacob Spevack. These payments were never entered as "sales" on the sales ledger. There were no invoices or sales memoranda identifying the purchasers who initially paid for the purchases. Cash payments were recorded in the cash receipts book but the source was disguised through various credit entries to liability accounts, such as "loans" and "advances." Later the liability accounts were closed out to sales, and for the fiscal year 1943 the transfers consisted of four entries which totaled $205,481.11. A similar adjustment of $35,505.29 was made for the fiscal *150 year 1944. The entries transferring the balances to sales were made, primarily upon the oral advice of Albert that the balances in such liability accounts were income from cumulative collections of side money rather than debts. Albert recorded in a small loose-leaf book over-ceiling collections made on meat sales by the Corporation. His records indicated that $103,416.03 had been collected for the fiscal year 1943 and $44,412.13 for the fiscal year 1944. These sales were included in respondent's adjustment. It has been stipulated that Sam's net worth was $133,200 (cash $109,000) in 1936; $85,000 (cash $10,000) in 1937; $121,047.99 (cash $250) in 1939; $107,988.59 (cash $545.23) in 1940, and $79,208.65 (cash $1,504.11) in 1941. Sam reported net income of $18,661.61 in 1935, $18,779.87 in 1936, and $8,910.58 in 1937. In 1939 he reported income of $7,712.16, and in 1940 a loss of $942.35. In 1937 he reported interest from Government bonds in the amount of $2,466, but in 1941 he and Clara reported $703.50 from Government obligations. Net income reported by petitioners on their tax returns was as follows: U.S.
Sam
Albert
Clara
Melvin
Year
Packing Co. [1]
Simon
Simon
Simon
Simon
1942 $
$ 1,608.12
[2] $1,349.42
No return
$1,317.69
1943
(10,366.31)
9,471.50
7,612.28
No return
7,009.50
1944
88,455.18
13,600.00
$ 1,166.67
6,697.10
1945
16,074.53
2,191.03
9,245.32
(19,184.95)
9,188.20
*151 During 1947 Sam and other members of the family had $70,000 in four savings and loan associations in Minneapolis and St. Paul. But in September 1942, $35,000 was withdrawn from these various savings and loan associations. This money was then used to purchase 350 shares of the Corporation's stock. Sam was responsible for the withdrawal and purchase of the stock. During the period April 16, 1943, to May 17, 1945, Sam, Albert, Clara and Melvin purchased negotiable United States Treasury bonds with a face value of $211,500 and accrued interest of $1,598.47, or a total of $213,098.47. Of this aggregate Sam purchased $130,500; Albert, $14,500; Clara, $38,000 and Melvin, $28,500. In addition to the $213,098.47 of currency used for bond purchases, the four individuals used another $21,780 in currency of which $1,780 was paid by Sam on a personal note, $10,000 was handled by one Marion Passler for Melvin in 1945, and $10,000 received by Clara from Albert. These sums aggregate $234,878.47. Respondent in the Corporation's deficiency notice made many adjustments for each of the fiscal years 1943, 1944 and *152 1945. All the adjustments were denied by the Corporation but at the trial it was stated that the Corporation only contested those items designated as "Sales" or "unreported sales," and the item included in the 1944 deficiency designated "Net operating loss." The items of "Sales" or "unreported sales" for each of the years are: Year Ended
August 31
Amount
1943
$141,517.91
[1] 1944
61,276.30
1945
33,519.26
Similarly, the other items in dispute in these proceedings are: Sam Simon
Year
Item
Amount
1942
Other Income
$ 2,937.93
1943
Other Income
102,351.73
1944
Other Income
3,230.66
1945
Other Income
25,080.90
Albert Simon
1942
Other Income
$ 5,720.38
1943
Salary
5,857.58
1943
Other Income
5,365.77
1945
Other Income
2,141.26
Clara Simon
1942
Total distributions received
from U.S. Packing Co., Inc.
$ 1,069.81
1943
Total distributions received
from U.S. Packing Co., Inc.
37,270.32
1944
Other Income
1,176.19
Melvin Simon
1942
Other Income
$ 862.95
1943
Other Income
30,063.14
1944
Other Income
948.75
1945
Other Income
6,844.03
*153 The respondent determined that proceeds from certain meat sales which totaled $234,878.47 were taxable both to the individuals and to the Corporation. The Corporation received from the sale of meat unreported income during the fiscal year 1943 a total of $141,517.91; for the fiscal year 1944, $46,009.64, and for the fiscal year 1945, $4,015. Opinion Issue I. Corporate Income In this first issue respondent determined that the Corporation failed to report all of its gain from over-ceiling sales of meat. In opposition, while the Corporation does not deny that it made over-ceiling sales, it contends that it reported and paid tax on all sales. Respondent determined that the Corporation's unreported sales were as follows: Fiscal Year Ended
August 31, 1943
Collections retained by Albert Simon,
not included in sales
$ 10,523.77
Amounts paid from proceeds of collec-
tions for account of Albert Simon,
not included in sales
1,330.52
Various and sundry unreported sales
129,663.62
$141,517.91
August 31, 1944
Various and sundry unreported sales
46,009.64
August 31, 1945
Various and sundry unreported sales
48,785.92
Total
$236,313.47
*154 Respondent's determination includes overceiling sales which were recorded by Albert in a little note book; these amounted to $103,416.03 in the fiscal year 1943 and $44,412.13 in 1944. In support of his position respondent has proven that there were $141,517.91 of overceiling sales in 1943, $46,009.64 in 1944, and $4,015 in 1945; this aggregates $191,542.55. Respondent also proved that the sum of $213,098.47 in currency had been used by the individual petitioners to purchase Government bonds, and another $21,780 in currency was available to the individual petitioners. These sums aggregate $234,878.47. The difference between $234,878.47 and $191,542.55 is $43,335.92 and has been denominated by respondent as "unidentified" over-ceiling sales. Respondent determined that the entire $234,878.47 had been diverted to the four Simon individuals personally, and that they did not report it on their individual income tax returns. The deficiencies of the individual petitioners will be considered in the next issue. In its 1943 return the Corporation added to sales, as recorded on invoices, some $205,481.11 of sales for which there were no invoices, and, similarly, $35,505.29 in 1944. Since *155 respondent's determinations are based on over-ceiling sales which allegedly were not reported, and since the Corporation reported certain over-ceiling sales, we are faced with the accounting problem of comparing reported over-ceiling sales with alleged unreported sales so as to avoid taxing some sales twice. Despite a voluminous record, neither of the parties have traced the sales so as to unequivocally separate the reported sales from unreported sales. We find, however, that the Corporation failed to prove that any part of the $141,517.91, which respondent determined to be unreported over-ceiling sales for the fiscal year 1943, was included in reported sales for that year. But respondent has proved, in addition to the presumption that his determination is correct, that these sales were made. Similarly, the determination of unreported sales of $46,009.64 for the fiscal year 1944 and $4,015 for the fiscal year 1945 must be sustained. The unreported sales for these three years aggregate $191,542.55, but respondent's aggregate adjustment for these years is $234,878.47. The difference of $43,335.92 has been called unidentified sales. After examining the record as to the unidentified *156 sales, we conclude that respondent has erred, and these sales should not be included in the adjustments to the Corporation's net income. In arriving at our conclusion which, in general, supports respondent's determination, we have given careful consideration to the Corporation's argument, but the very nature of its contention makes substantiation almost impossible. For example, it argues that all over-ceiling sales were reported for tax purposes in the following manner: the money from individual sales was transferred to Superb Packing Company which in turn gave the Corporation a check for the sum received. The Corporation then recorded the money from Superb Packing Company as an advance or loan. At the end of the year when the Corporation's books were adjusted the balances in the advance or loan accounts were transferred to sales and reported on the corporate tax returns. We have ample evidence that Superb Packing Company transferred money to the Corporation, and similarly these sums were reported on the corporate tax returns. However, there is not sufficient proof that the money from these over-ceiling sales, which were identified by respondent, made up the advances or loans on *157 petitioner's books. For this reason, with the exclusion for "unidentified sales", respondent must be sustained. Issue II. Individual Income In this issue respondent determined that Sam, Albert, Clara and Melvin Simon diverted for personal use $191,542.55 of identified over-ceiling sales, and also $43,335.92 of alleged unidentified sales. These sums aggregate $234,878.47. Respondent's determination is based on the fact that Sam, Albert, Clara and Melvin, during 1943, 1944 and 1945, purchased United States Treasury bonds worth an aggregate of $213,098.47 and, in addition, they spent or used another $21,780. Again, these two figures total $234,878.47. Respondent allocated the aggregate $234,878.47 to the four individuals in the ratio of their bond purchases. As a result of our findings in the first issue, if we now find that the individual petitioners have deficiencies, these deficiencies should be computed on the basis of over-ceiling sales in the amount of $191,542.55. Petitioners' position is that respondent's determination was improper. They allege, as stated above, that they used their own money, some of which had been accumulated in prior years and the rest was income *158 reported in the years before us. Restated, the question is, did Sam purchase $130,500 of Government bonds from 1943 through 1945 from unreported income, or from accumulated savings and reported income? Similarly, the amount for Albert is $14,500, for Clara, $38,000, and for Melvin, $28,500. With respect to each of the individuals, Sam, Albert, Clara and Melvin, there has been no showing that the cash used for Government bonds was from gifts, devises, or other similar sources in the years before us. We have carefully examined the record and it is our conclusion that the individual petitioners understated their income during the years before us. Their contention that they bought the bonds from accumulated savings and earnings does not stand the scrutiny of careful examination. For example, the aggregate of Sam's 1941 net worth and reported income in the years before us was approximately $106,000. But he spent $130,500 for bonds. Sam spent more for bonds than his aggregate net worth and reported net income, without even considering such items as taxes and cost of living expenses. Similar figures can be shown for each of the other individual petitioners. Our conclusion as to the *159 unreported income from over-ceiling sales is based primarily on petitioners' failure of proof, and we recognize that petitioners' burden has been complicated by the nature of this case. In the first issue the record compelled us to find that the Corporation had gains from unreported over-ceiling sales. Since there were gains, some one must have benefited from these gains. Respondent determined that the individuals diverted the corporate gains to their personal use. Petitioners have shown that respondent erred in the "unidentified" sales, but they did not show error as to $191,542.55. Therefore, since respondent has determined that the individuals received the money, it is proper that the sum be prorated to the individual petitioners. In the deficiency notices respondent prorated the gains from over-ceiling sales to the individuals in the ratio of their bond purchases. Since petitioners have not shown this method to be erroneous and since the record does not suggest a better method, this method of distributing the gain to the individuals should be used in a Rule 50 computation. In addition to the deficiency based on money diverted from over-ceiling sales, respondent determined that *160 Albert understated his salary for 1943 in the amount of $5,857.58. Albert denied that he received this money. The sum of $5,857.58 is the difference between the net amount of $13,634.86 which the Corporation's books indicated as accrued salary payable to Albert and Albert's net reported salary for 1943. Albert as an individual was a cash basis taxpayer. We find from the record as a whole that Albert did not understate his salary for 1943, and as to this item petitioners must be sustained. Issue III. Failure to file corporate returns The questions on this third issue are whether the Corporation is liable for the penalties under section 291(a) of the 1939 Code for failing to file an excess profits tax return for the fiscal year 1943, and for failing to file its corporate income and declared value excess-profits tax return for 1943 within the period prescribed by law. No excess profits tax return was filed by the Corporation for the fiscal year 1943. Under section 291(a) a penalty should be determined unless the failure to file was due to reasonable cause and not willful neglect. Allegedly, the failure to file an excess profits tax return was due to the fact that the Corporation *161 sustained a loss for the fiscal year 1943. However, the reported sales did not include income from over-ceiling sales. Certainly, in this case failure to report sales is not reasonable cause for failing to file an excess profits tax return. Therefore, if, under a Rule 50 computation, excess profits tax is due from the Corporation for 1943, it is also liable for the 25 per cent penalty under section 291(a). Burford Oil Co., 4 T.C. 613, affd. 153 Fed. (2d) 745. The next question is whether petitioner corporation is liable for the penalty for failing to file an income and declared value excess-profits tax return for the fiscal year 1943. It is stipulated that the return for the fiscal year 1943 was filed July 11, 1944. The return should have been filed on or before the fifteenth day of the third month following the close of the fiscal year, but the Corporation had been granted an extension to January 15, 1944. There has been no showing of a reasonable cause for the late filing of the return, and petitioners presented no argument on brief on this issue. Respondent's determination of a penalty for late filing must be sustained. Issue IV. Failure to file *162 individual returns The next issue is whether Clara is liable for a penalty for 1942 and 1943 for failing to file an individual income tax return. It is petitioner's contention that she did not receive the income as attributed to her in the deficiency notices. However, by stipulation of the parties, and by our findings above, petitioner had sufficient income to require the filing of a return for each of these years. No reasonable cause for failure to file has been presented; respondent's determination that Clara is liable for a penalty is proper. Issue V. Fraud This final issue involves the question of fraud, that is, were any of the deficiencies for the Corporation or individual petitioners due to fraud with intent to evade tax. Section 293(b). Respondent has determined a fraud penalty for each of the petitioners for each of the years before us. We shall first consider the Corporation. Here we find a situation involving a taxpayer admittedly reporting for tax purposes certain over-ceiling sales not found on corporate invoices; but at the same time there is evidence of other over-ceiling sales which were not reported. Petitioner did not, probably could not, reconcile the reported *163 sales with those determined to be unreported. Therefore, we are forced to sustain respondent's determination of the deficiencies. Now petitioner's failure to overcome the presumption of the correctness of the deficiencies does not create a presumption or inference of fraud. We are not entirely convinced that the reported over-ceiling sales omitted those sales which were the basis of the corporate deficiencies; nor is it clear that part of the deficiencies resulted from a fraudulent intent to evade tax. Accordingly, we find that respondent has not sustained his burden of proof on this issue with respect to the Corporation. When we consider the individual petitioners the situation is somewhat different. Sam, for instance, failed to report such items as dividends, interest, and rent for each of the years before us. No explanation was given or attempted for this omission of income from his tax returns. The pattern of his omissions is something more than negligence and we are constrained to find that part of his deficiency for each year before us was due to fraud with intent to evade tax. We find that the fraud penalty is not applicable to Albert. The principal adjustment to his net *164 income for each year was based on the alleged fact that he retained, but did not report, money from the Corporation's over-ceiling sales. We partly sustained respondent's determination because Albert did not prove that he had sufficient cash accumulations at the beginning of each period to account for his bond purchases. This is not proof of fraud. Consequently, respondent's fraud penalty with respect to Albert is not approved. In 1942 and 1943 Clara failed to file tax returns, but from 1942 through 1944 she had interest and dividend income which was not reported. In the absence of an adequate explanation for not reporting this income we find that part of Clara's deficiencies were due to fraud with intent to evade tax; respondent is sustained. It is stipulated that Melvin received $3,753 in 1942 from a Minnesota meat business. He reported only $1,500 of this gain. In 1943 he also failed to report some $600 of salary. His failure to report these gains was not adequately explained. We have concluded that part of his deficiency for these years was due to fraud with intent to evade tax, but we do not find fraud for 1944 and 1945. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Sam Simon, Docket No. 31377; Albert Simon, Docket No. 31378; Clara Simon, Docket No. 31379; and Melvin Simon, Docket No. 31380.↩
1. For fiscal year ended August 31. ↩
2. Amended return for 1942, $8,918.70.↩
1. This figure includes $15,266.66 transferred from 1945 and added to 1944 by respondent in the deficiency notice.↩